UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSE
NASHVILLE DIVISION

| | |
|---|---|
| STAR NEWS DIGITAL MEDIA, INC. ET AL,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Case No.: 3:23-cv-00467<br>Judge Aleta A. Traugher |

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

1.  I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act (FOIPA) litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA) from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various

assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division where I oversaw FOIPA litigation for the U.S. Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

2. In my official capacity as Section Chief of RIDS, I supervise approximately 239 FBI employees, supported by approximately 107 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based on my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. §552a. Specifically, I am aware of the FBI's handling of Plaintiffs' FOIA request for "Audrey Hale's Manifesto related to the Nashville Covenant School Shooting on March 27, 2023."

4. The FBI submits this declaration in support of Defendant's Cross-Motion for Summary Judgement and Opposition to Plaintiffs' Motion for Summary Judgment. This declaration provides the Court and Plaintiffs with a summary of the administrative history of Plaintiffs' request; the procedures used to search for and review responsive records subject to the

FOIA; and the FBI's justification for categorically denying records pursuant to FOIA Exemption 7(A), while preserving underlying FOIA Exemptions 6, 7(C), and 7(F). *See* 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(F).

## Part I:

## ADMINISTRATIVE HISTORY OF PLAINTIFFS' FOIA REQUEST

5. By electronic FOIA (eFOIA)[1] dated April 20, 2023, Matt Kittle, on behalf of the Tennessee Star, Star News Network (hereafter Plaintiffs) submitted a FOIA request to the FBI requesting "a copy of the following document: Audrey Hale's Manifesto related to the Nashville Covenant School Shooting on March 27, 2023." Plaintiffs provided additional information regarding the subject of their request, to include: "The record came into FBI's possession on or about that date. Media reports indicate that the report is in the possession of the FBI, specifically the Behavioral Analysis Unit." Plaintiffs requested a waiver of all fees associated with the processing of their request. To justify Plaintiffs' fee waiver request, Plaintiffs stated "I am member of the news media reporting on a matter of utmost importance to my readers and the general public." Plaintiffs requested their request be granted expedited processing. To justify Plaintiffs' request for expedited processing, Plaintiffs stated "this is a matter of utmost important [*sic*] to our readers and the general public. It has been several weeks since the documents requested came into the possession of the FBI, raising questions and speculation in the public's mind". **(Ex. A.)**

---

[1] The FBI's eFOIPA system allows for electronic receipt of Freedom of Information/Privacy Act (FOIPA) requests as well as electronic responses to those requests when possible. *See FBI Records: Freedom of Information/Privacy Acts (FOIPA)*, available at https://efoia.fbi.gov (last visited September 16, 2021).

6. By letter dated April 24, 2023, the FBI acknowledged receipt of Plaintiffs' FOIA request and notified Plaintiffs it had assigned their request FBI FOIPA Request Number 1590230-000. The FBI also informed Plaintiffs their request for expedited processing was denied because they did not provide enough information concerning the statutory requirements for expedition. The FBI informed Plaintiffs they could appeal the FBI's response to the DOJ, Office of Information Policy (OIP) within ninety (90) days of its letter, contact the FBI's public liaison, and/or seek dispute resolution services by contacting the Office of Government Information Services (OGIS). **(Ex. B.)**

7. By eFOIA dated April 25, 2023, Plaintiffs submitted an updated FOIA request to the FBI following the FBI's denial of Plaintiffs' request for expedited processing. Their updated request sought "the notes, journal entries, plans, letters, writings, or other documents making up what law enforcement officials have labeled as Audrey Hale's 'manifesto,' related to the Nashville Covenant School Shooting on March 27, 2023." Plaintiffs provided additional information regarding the subject of their request, including that "during a press conference on that same day, Metropolitan Nashville Police Chief John Drake labeled these documents as a 'manifesto,' stating 'we have a manifesto.' On or about that same day, Nashville Police provided the FBI a copy of those documents for review, including review by the Behavioral Analysis Unit." Plaintiffs requested a waiver of all fees associated with the processing of their request and expedited processing under 28 CFR 16.5(e)(1)(iv). **(Ex. C.)**

8. By letter dated April 25, 2023, the FBI informed Plaintiffs the material they requested was located in an investigative file exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A). 5 U.S.C. § 552(b)(7)(A) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or

4

> information ... could reasonably be expected to interfere with enforcement proceedings...

The FBI also advised that the records responsive to Plaintiffs' request were law enforcement records; there was a pending or prospective law enforcement proceeding relevant to these responsive records; and release of the information in these responsive records could reasonably be expected to interfere with enforcement proceedings. Therefore, the FBI informed Plaintiffs that their request was administratively closed. Finally, the FBI informed Plaintiffs they could appeal the FBI's response to the DOJ, OIP within ninety (90) days of its letter, contact the FBI's public liaison, and or seek dispute resolution services by contacting the OGIS. **(Ex. D.)**

9. Via DOJ's online portal dated April 25, 2023, Plaintiffs submitted an appeal to DOJ, OIP challenging the FBI's response to FOIA request 1590230-000 and the FBI's denial of Plaintiffs' expedite request. **(Ex. E.)**

10. By letter dated April 26, 2023, OIP acknowledged receipt of Plaintiffs' appeal and informed Plaintiffs OIP assigned appeal number A-2023-01147 to their appeal. **(Ex. F.)**

11. By letter dated May 5, 2023, OIP informed Plaintiffs it was affirming the FBI's actions in response to Plaintiffs' FOIPA Request Number 1590230-000. OIP stated the FBI properly withheld this information in full because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision. Additionally, OIP stated the FBI responded to Plaintiffs' request by letter dated April 25, 2023 and advised that because the FBI responded to Plaintiffs' request, their appeal of the FBI's failure to grant expedited processing of their request was moot. Finally, OIP advised Plaintiffs if they were dissatisfied with the action on their appeal, Plaintiffs could file a lawsuit in federal district court, or seek mediation services from OGIS. **(Ex. G.)**

12. On May 10, 2023, Plaintiffs filed their Complaint in the instant civil action. (ECF. No. 1.).

13. By letter dated May 11, 2023, the FBI acknowledged receipt of Plaintiffs' second FOIA request (from April 25, 2023), and notified Plaintiffs it had assigned this follow-up/re-submitted request FBI FOIPA Request Number 1590230-001. The FBI again informed Plaintiffs the material they requested was located in an investigative file exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A). Finally, the FBI informed Plaintiffs they could appeal the FBI's response to the DOJ, OIP within ninety (90) days of its letter, contact the FBI's public liaison, and or seek dispute resolution services by contacting the OGIS. **(Ex. H.)**

## PART II:

## THE FBI'S SEARCH

14. Plaintiffs' request dated April 20, 2023 seeks "Audrey Hale's Manifesto related to the Nashville Covenant School Shooting on March 27, 2023."

15. On or about March 30, 2023, RIDS contacted the Memphis Field Office (MEFO), whose area of responsibility includes Nashville, and confirmed the FBI did possess the documents described by Plaintiffs as the "manifesto,"[2] and that the records were associated with an active investigation and should be withheld pursuant to Exemption (b)(7)(A).[3] Once Plaintiffs filed their instant Complaint, RIDS coordinated with the relevant custodians and through

---

[2] Specifically, RIDS understands that the writings described by the Metro Nashville Police Department (MNPD) law enforcement officials as a "manifesto" are those writings of the assailant found in the assailant's car on the day of the shooting.

[3] Prior to the receipt of Plaintiff's request, the FBI received numerous other requests concerning "Audrey Hale's Manifesto" and the Covenant School Shooting and RIDS contacted MEFO and based on their guidance categorically denied all requests concerning the subject pursuant to Exemption 7(A).

6

discussions with MEFO, RIDS learned that the FBI's Behavioral Analysis Unit (BAU) had possession of the responsive documents. RIDS coordinated with BAU to obtain and review the responsive records for any segregable information and confirmed the records are exempt in their entirety pursuant to Exemption 7(A).[4]

## PART III:
## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

16. The FBI processed all records responsive to Plaintiffs' request to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiffs with all information in the public domain and with all reasonably segregable, non-exempt information. The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiffs. Further description of the information withheld, beyond what is provided in this declaration, could identify the actual exempt information.

### EXEMPTION 7 THRESHOLD

17. Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein

---

[4] Metro Nashville Police Department (MNPD) shared the records with the FBI's BAU for purposes of analytical assistance and has indicated that the FBI should return those records once the FBI's analysis is complete.

were compiled for the following specific law enforcement purposes.

18. The records at issue were compiled in furtherance of the FBI's investigation of the events surrounding the shooting at the Covenant School on March 27, 2023. The FBI is still analyzing information for possible violations of federal criminal law within its purview. Considering these records were compiled to document the FBI's investigation of potential crimes, the FBI determined they were compiled for a law enforcement purpose.

19. The FBI also compiled the records at issue pursuant to its assistance to law enforcement function. As prescribed by AGG-DOM, paragraph III.C., the FBI may provide investigative assistance to state, local, and tribal enforcement agencies "in the investigation of matters that may involve federal crimes or threats to the national security, or for such other purposes as may be legally authorized." As relevant here, the FBI deployed personnel to aid state and local partners in their investigation. The FBI support included victim support and services as well as evidence collection and analysis support. The FBI continues to provide support and expertise pertaining to the shooting at the Covenant School on March 27, 2023, to local partners where needed.

## EXEMPTION (b)(7)(A)
### PENDING LAW ENFORCEMENT PROCEEDINGS

20. Exemption 7(A) protects "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

21. Application of Exemption 7(A) requires the existence of law enforcement records, a pending or prospective law enforcement proceeding, and a determination that release of the information could reasonably be expected to interfere with the enforcement proceeding.

22. Through coordination with the appropriate custodians, the FBI located copies of

the documents described by Plaintiffs as "Audrey Hale's Manifesto" that are associated with ongoing law enforcement proceedings.

23. RIDS contacted the case agent for the responsive documents and to determine whether their release would cause harm to pending enforcement proceedings. The FBI's case agent advised the investigation was active and that the release of these records could harm the ongoing law enforcement proceedings because early release could negatively impact ongoing efforts related to evidence collection, evaluation of possible motive, and victim/witness management.

24. Additionally, Lieutenant Brent Gibson of MNPD, confirmed that the local law enforcement investigation is still ongoing and that if the records described by Plaintiffs as a "manifesto" "were released fully, that release could reveal the nature, scope, direction, and focus of the MNPD's ongoing investigation. Disclosure of this type of information could undermine the investigation efforts because potential witnesses could shape their testimony in light of the disclosed information. Potential witnesses may also decline to cooperate if those potential witnesses became aware of the scope of the investigation." Furthermore, MNPD advised that "Even though the assailant died at the school, the criminal investigative file does not automatically, instantly close. Investigators must work to gather and analyze evidence in the case and to determine if related crimes were committed, are being planned, or whether other people were involved. We need to investigate the matter thoroughly, as we do in all homicides, to rule out any co-conspirators or additional crimes related to this matter." (Declaration of Lieutenant Brent Gibson, filed concurrently with the FBI's declaration.)

25. The FBI applied Exemption 7(A) to protect the documents responsive to Plaintiffs' FOIA request for copies of "Audrey Hale's Manifesto." First, as previously

9

demonstrated, these are law enforcement records compiled during both local and federal law enforcement investigations concerning the shooting at the Covenant School on March 27, 2023. Secondly, the records pertain to pending law enforcement proceedings relating to the events of March 27, 2023. Finally, the FBI has determined that release of the records would reasonably interfere with potential law enforcement proceedings. As a result, the FBI is categorically denying access to these records under FOIA Exemption (b)(7)(A) because the production of such records could reasonably be expected to interfere with law enforcement proceedings for the reasons set forth above. *See supra* ¶ 24.

26. The application of Exemption 7(A) in litigation involves a three-part process requiring the government to review each document withheld on a document-by-document basis; to group the documents into functional categories and to describe the categories; and to explain why release of each category of documents would interfere with pending or prospective law enforcement proceedings. The FBI conducted a document-by-document review in this case to determine the applicability of Exemption 7(A), in addition to all underlying exemptions, and has determined the responsive records fit into a single functional category. The following paragraph describes the functional category and explains why release of the responsive records would interfere with prospective law enforcement proceedings.

TYPE AND CATEGORY OF RESPONSIVE RECORDS

27. The type and category of the responsive records corresponds directly to the request: the documents described by Plaintiffs as "Audrey Hale's Manifesto". Specifically, the documents at issue in this case are the assailant's writings located in her car and described by MNDP as a "manifesto." The FBI would normally sort responsive records into broader functional categories when applying Exemption 7(A) but since these records are of a singular type - the so-called "manifesto" - reliance on any broader functional categories to facilitate the

7(A) analysis is unnecessary. The responsive documents contain evidentiary or investigative materials provided to the FBI by a local law enforcement agency. These types of documents could be used as evidence in court proceedings and are often incorporated in other FBI documents which disseminate intelligence/investigative information and can be utilized to set leads in furtherance of the FBI's investigative efforts. These documents were obtained by MNPD and shared with the FBI to support their investigation in the aftermath of The Covenant School shooting. To more fully describe these records, and their contents, could reasonably lead to disclosure of the nature of the pending investigative efforts/programs to which these records pertain. Such a disclosure could be detrimental to success of the pending and prospective enforcement proceedings by permitting potential subjects to estimate the scope of the FBI's investigation and judge whether their activities are likely to be detected; allowing potential investigative subjects to discern the FBI's investigative strategies and employ countermeasures to avoid detection and disruption by law enforcement; and/or allow potential investigative targets to formulate strategies to contradict evidence to be presented in Court proceedings.

### PENDING LAW ENFORCEMENT PROCEEDINGS

28. Material responsive to Plaintiffs' request is associated with ongoing investigations, including the FBI's ongoing investigation. The FBI is still analyzing information for possible violations of federal criminal law within its purview and will continue to analyze any new information to develop additional intelligence and investigative leads. Even though the assailant is deceased, the FBI is still reviewing the records at issue and working with local law enforcement partners in part to determine if any federal criminal laws were violated, that potentially could include whether underlying bias provided motivation, or if any co-conspirators or like-minded contacts were involved. To provide additional detail about the nature and scope of this investigation would reveal exempt information that could trigger harm to the ongoing

investigation as well as ongoing efforts related to evidence, evaluation, and victim/witness management. Release of any information could reasonably be expected to interfere with these pending criminal law enforcement proceedings, as well as potential enforcement proceedings such as spin-off investigations and/or prosecutions that may result from the investigations. Until the potential and pending enforcement proceedings are concluded and resolved, no information related to the pending investigations can be released to Plaintiffs without interfering in pending or prospective enforcement proceedings. Additional information can be provided *in camera* at the Court's request.

REASONABLE EXPECTATION OF INTERFERENCE

29. In processing requests under the FOIA, the FBI has established procedures allowing it to implement the FOIA as efficiently as possible. When a request is received for records related to an ongoing FBI investigation, the FBI commonly asserts FOIA Exemption (b)(7)(A) to protect the pending investigation and/or any prospective investigations or prosecutions, but the FBI segregates and releases information related to the pending investigation where release would not jeopardize ongoing or future investigative or prosecutive efforts. As part of the FBI's document-by-document review of the responsive records for the preparation of this declaration, the FBI determined no material from the responsive records can be released without jeopardizing further investigative and/or prosecutive efforts.

30. Any release of information from the responsive records to Plaintiffs would be premature and likely to cause harm. While the pending investigative records at issue pertain to the shooting at The Covenant School on March 27, 2023, the records, by their nature, also pertain to evidence collection and evaluation efforts as well as information concerning victims or witnesses.

31. Release of these records would allow potential targeted individuals to critically

12

Case 3:23-cv-00467   Document 34-2   Filed 07/03/23   Page 12 of 20 PageID #: 219

analyze documents concerning these investigations. Such individuals would then possess the unique advantage of knowing the details surrounding the potential criminal activities, the identities of potential witnesses, and the direct and circumstantial evidence of the potential criminal activities. These individuals could therefore use the released information to their advantage to destroy evidence, intimidate potential witnesses, and/or evade the FBI's investigative efforts. In this regard, the following potential harms from the release of information contained in these documents exist:

    A. the identification of individuals, sources, and potential witnesses who possess information related to the investigation and possible harm to, or intimidation of such individuals;

    B. the use of released information to counteract evidence developed by investigators, to alter or destroy potential evidence, or to create false evidence;

    C. the use of information released to uncover the government's potential prosecution and trial strategy; and

    D. the use of released information by any potential subject of the investigations to assess the likelihood that he or she may be prosecuted and/or convicted in connection with this investigation.

    32. Furthermore, the release of this information could allow other third parties to interfere with the pending proceedings by providing them the means to harass/intimidate witnesses, investigators and/or prosecutors, and/or allow them the opportunity to create false evidence or corrupt valuable evidence, calling into question the validity of facts gathered during FBI and local law enforcement investigations. This is because once a release is made to Plaintiffs under the FOIA, Plaintiffs' use and dissemination of the information to third parties is unrestricted.

13

Case 3:23-cv-00467   Document 34-2   Filed 07/03/23   Page 13 of 20 PageID #: 220

## Assertion of Underlying Exemptions Under the FOIA

33. The information responsive to Plaintiffs' request has been denied in its entirety pursuant to FOIA Exemption (b)(7)(A). In light of the D.C. Circuit's ruling in *Maydak*, 218 F.3d 760, the FBI asserted FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) to protect the FOIA exempt portions of the responsive records within the pending investigative files. In the following paragraphs, the FBI justifies its application of these underlying exemptions, to the extent public disclosure and discussion of the applicable exemptions will not adversely affect the active, ongoing criminal investigations in this case by revealing the nature, scope, focus, and conduct of the investigations. At this time, public disclosure of more detailed information on the application of the following exemptions would undermine the very interests the FBI seeks to protect through its assertion of Exemption (b)(7)(A). The FBI can provide additional explanation *in camera ex parte* upon the Court's request.

## Exemptions (b)(6) and (b)(7)(C)
### Clearly Unwarranted Invasion of Personal Privacy and Unwarranted Invasion of Personal Privacy

34. Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

35. Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[5]

---

[5] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis

36. When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When asserting underlying exemptions within the records at issue, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual, their name, or their identifying information would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance where the FBI asserted Exemptions 6 and 7(C) as underlying exemptions, the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.[6]

NAMES AND IDENTIFYING INFORMATION OF THIRD PARTIES MERELY MENTIONED

37. The FBI asserted Exemptions 6 and 7(C) as underlying Exemptions to protect the names and identifying information of third parties who were merely mentioned in the investigative records responsive to Plaintiffs' request. The FBI has information about these third parties in its files because these individuals were tangentially mentioned in the responsive

---

and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

[6] In some circumstances, surviving relatives of a deceased individual retain privacy interests in their information, even after the individual's death. *See generally National Archives v. Favish*, 124 S. Ct. 1570 (2004).

15

records. Specifically, the exempt information includes the names of third-party individuals mentioned by the assailant in her writings including family members, friends, or acquittances that may not be directly related to the shooting itself, as well as individuals the assailant associated with the planned shooting but may not be directly targeted in the responsive records. These third parties maintain substantial and legitimate privacy interests in not having this information disclosed and thus, being connected with an FBI and/or local law enforcement matter. Considering the FBI is an investigative and intelligence agency, disclosure of these third parties' names and/or identifying information in connection with an FBI and/or local law enforcement investigation carries an extremely negative connotation. Disclosure of their identities would subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. The FBI then considered whether there was any public interest that would override these privacy interests and concluded that disclosing information about individuals who were merely mentioned in FBI records would not significantly increase the public's understanding of the operations and activities of the FBI. Accordingly, the FBI properly protected these individuals' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

### EXEMPTION (b)(7)(F)
### ENDANGERMENT OF THE LIVES OR PHYSICAL SAFETY OF INDIVIDUALS

38. 5 U.S.C. § 552 (b)(7)(F) permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual."

39. Within the records at issue, the FBI asserted Exemption 7(F) to protect specific detailed information concerning Audrey Hale's plans for the Covenant School Shooting. This is

16

because the responsive records contain detailed plans and descriptions concerning the planning of an attack against the school. Given the extremely detailed nature of the plans for this attack within the responsive records, the FBI determined that release would risk public safety by giving other potential attackers in-depth plans for carrying out a similar attack. Release of these plans would assist a potential attacker in circumventing law enforcement response and could result in substantial loss of life, representing a substantial risk to public safety. For these reasons, the FBI reasonably determined release of any of this information in the context of these investigative records would endanger the lives or physical safety of the public, and therefore asserted Exemption 7(F) to protect this information.

## FORESEEABLE HARM STANDARD

40. The FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption, or disclosure is prohibited by law. Accordingly, the FBI's analysis of records responsive under the FOIA is a two-part process. First, the FBI determines whether a record is exempt pursuant to one or more FOIA exemptions. Second, if the record is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record. In each of the withheld records at issue here, the FBI conducted this two-part analysis and only withheld records where it determined the withheld record met both of these criteria. The FBI's foreseeable harm is more fully described in relation to each of the exemptions discussed above.

## SEGREGABILITY

41. Following its segregability review, RIDS determined all of the responsive records

17

required withholding in their entirety. RIDS determined all information on each page was covered by one or more of the cited FOIA exemptions; therefore, there was no information that could be reasonably segregated for release without triggering foreseeable harm to one or more of the cited FOIA exemptions. In this case, the documents are exempt in their entirety pursuant to Exemption 7(A), but portions of each document may also be exempt pursuant to the underlying exemptions described in ¶¶33-39 *supra*. Although MNPD states that a "release of a limited subset of the investigative file in redacted form would not impede the MNPD's investigation" (Declaration of Lieutenant Brent Gibson), the FBI's investigation concerns potential federal crimes that potentially could include whether underlying bias provided motivation, or if any co-conspirators or like-minded contacts were involved. Because the subset of information that the MNPD believes would not impede the MNPD's investigation includes information pertinent to the FBI's investigation of potential federal crimes, the FBI cannot release redacted versions of the records at issue in this case without harming its ongoing investigation.

## CONCLUSION

42. The FBI performed adequate and reasonable searches for responsive records that identified the precise records Plaintiffs requested - "Audrey Hale's Manifesto related to the Nashville Covenant School Shooting on March 27, 2023" - and properly withheld those records pursuant to FOIA Exemption 7(A). Specifically, the FBI determined investigations associated to these records are still pending, and release of the records could reasonably be expected to endanger pending enforcement proceedings. Furthermore, the FBI determined that FOIA Exemptions 6, 7(C), and 7(F) also apply to portions of the responsive records, disclosure of which could unwarrantedly invade individuals' privacy and/or endanger the life or physical safety of individuals. After extensive review of the documents at issue, the FBI determined that

18

Case 3:23-cv-00467    Document 34-2    Filed 07/03/23    Page 18 of 20 PageID #: 225

there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through H attached hereto are true and correct copies.

Executed this **3rd** day of July 2023.

*/s/ Michael G. Seidel*

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia