UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

---

STAR NEWS DIGITAL MEDIA, INC.,
MICHAEL PATRICK LEAHY,
and MATTHEW D. KITTLE,

    Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Case No. 3:23-cv-00467
Judge Aleta A. Trauger

---

**PLAINTIFFS' COMBINED REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

"MNPD believes that releasing a redacted version of certain of the shooter's writings would not impede the investigation." Dkt. 34-4:4. Those are the words of FBI's declarant, discussing the impact that complying with Plaintiffs' request would have on the local law enforcement investigation here. Yet, despite local law enforcement's belief that releasing the requested records will not impede their investigation, the FBI still maintains they will not release *any* records (redacted or not) in response to Plaintiffs' request.

This case concerns the media's ability to accurately and completely report on a horrific event that occurred in Nashville on March 27, 2023. Plaintiffs are a news

organization, its Editor-in-Chief, and a reporter, who have extensively reported on the events of March 27, 2023. In the aftermath of that terrible day, local law enforcement announced that they had found various writings from the shooter, which they described as a "manifesto." As the American public continues to reel from the events of that day, and looks to take steps that can ensure such an event can never again tear a community apart, Plaintiffs sought copies of the manifesto writings to understand, report on, and inform the public and policy makers of the shooter's motives. Decl. Kittle ¶ 3. In fact, on August 21, 2023, the Tennessee Legislature will sit in special session to consider gun control legislation in response to the shooting. Decl. Kittle ¶ 6. Plaintiffs' reporting ensures that policy makers and the public at large are informed on these issues; access to the manifesto is critical to that reporting.

But FBI does not believe the press, policy makers, or the public at large are entitled to review those writings, even when debating reforms to ensure this type of horrific crime never occurs again. Quoting statutory language, but with no supporting justification, FBI declares the records sought are law enforcement records which could reasonably be expected to interfere with law enforcement proceedings and are thus exempted from disclosure under the freedom of information act. 5 U.S.C. § 552(b)(7)(A).

The agency bases its boilerplate opposition to releasing the requested records on the possibility that someday they may engage in an enforcement action. Further, FBI contends the records were obtained as part of *their* enforcement action from a local law enforcement agency. But FBI's conclusory statements regarding their own

alleged enforcement actions are not sufficient to block disclosure of public records under the claimed exemption. Additionally, *their own* declarant makes clear that releasing records would not impede the local law enforcement agency's enforcement.

What's more is that FBI apparently believes Plaintiffs' request is much broader in scope than it was. Plaintiffs' requested records are very limited—specific writings related explicitly to the motives of the shooter. Dkt. 1:¶ 14. Plaintiffs do not seek anything more. Anything in those writings that even remotely *could* impede some hypothetical future enforcement action would easily be segregable and the remaining writings could easily be made public.

For the reasons laid out in Plaintiffs' original motion for summary judgment, and as more fully explained herein, the FBI has not properly claimed an exemption. Plaintiffs are entitled to the information requested, and this Court should deny Defendant's motion for summary judgment, grant Plaintiffs' motion for summary judgment and order these records released.

**ARGUMENT**

The Freedom of Information Act (FOIA), 5 USC § 552, is vital to the functioning of our democratic institutions. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S. Ct. 2311, 57 L. Ed. 2d 159 (1978). "FOIA 'strongly favor[s] public disclosure of information in the possession of federal agencies' and that an agency withholding documents responsive to a FOIA request

bears the burden of showing that a FOIA exemption shields the materials at issue." *Am. Oversight v. United States Dep't of Just.*, 45 F.4th 579, 587 (2d Cir. 2022) (citation omitted). But the limited exemptions from FOIA "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act" and accordingly, the exemptions "must be narrowly construed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S. Ct. 471, 107 L. Ed. 2d 462 (1989) (citation omitted). Any doubt regarding the applicability of an exemption should be "resolved in favor of disclosure." *Fed. Lab. Rels. Auth. V. U.S. Dep't of Veterans Affs.,* 958 F.2d 503, 508 (2d Cir. 1992); *see also Dep't of Air Force v. Rose*, 425 U.S. 352, 366, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976).

Here, using only conclusory statements, FBI attempts to deny public access to public records. The law does not allow it, and neither should this Court. FBI has not met their burden here. As a result, FBI's claimed exemptions to FOIA do not apply, and the records must be disclosed.

**I.    The FBI did not properly withhold records under Exemption 7(A).**

Plaintiffs do not dispute that the requested records "were compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(A). FBI obviously gathered these records as part of its duties as a law enforcement agency,[1] and it plainly acknowledges that

---

[1] "[R]ecords compiled by the FBI per se satisfy this requirement." *Am. C.L. Union of Michigan v. F.B.I.*, 734 F.3d 460, 466 (6th Cir. 2013).

- 4 -

the records have been located in full and are in their possession.[2] But those facts alone are not enough to prevent disclosure. FOIA does not recognize "'blanket exemptions' for Government records simply because they were found in investigatory files compiled for law enforcement purposes." *Robbins Tire & Rubber Co.*, 437 U.S. at 236. "Exemption 7(A) does not authorize automatic or wholesale withholding of records or information simply because the material is related to an enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989). The government must show more.

As this Court has explained, determining whether release of the record could reasonably be expected to interfere with enforcement proceedings "requires a two-step analysis: a court considers, first, whether a law enforcement proceeding is pending or prospective, and second, whether disclosure of the requested records and information therein could reasonably be expected to cause some articulable harm to that proceeding." *EEOC v. Whiting-Turner Contracting Co.*, No. 3:21-CV-00753, 2022 WL 3221825, at *4 (M.D. Tenn. Aug. 9, 2022) (citations omitted). And again, the burden is entirely on the FBI to establish that these requirements have been met. "The burden is on the agency to demonstrate, not the requester to disprove, that the

---

[2] While it appears that the records have been located in full and are in FBI's possession, it is unclear, however, if FBI is artificially limiting Plaintiffs' request to records located in the shooter's car. "…[T]he assailant's writings located in her car and described by MNPD as a 'manifesto.'" Seidel Decl., Dkt. 34-2: ¶ 27. Plaintiffs did not limit their request to records found in the shooter's car.

- 5 -

materials sought may be withheld due to an exemption." *Vaughn v. United States*, 936 F.2d 862, 866 (6th Cir. 1991).

Plaintiffs seek to obtain the manifesto writings in order to report on the motivations of the shooter. Doing so will inform the public and policy makers as to the motivations for the horrific crimes committed to ensure every step is taken so that they are not repeated. Plaintiff does not seek the names of witnesses, other potential co-conspirators, or even information that could indicate the existence of such witnesses or co-conspirators. Plaintiffs seek no information about third parties. Plaintiffs seek to review the shooter's manifesto writings which indicate the shooter's motivation to act. That is it. The shooter is, undisputedly, deceased, and there can be no harm to an ongoing investigation of a deceased individual. The requested writings plainly do not trigger Exemption 7(A), and FBI has not met its burden.

### A. FBI has not established that disclosure would interfere with an enforcement proceeding.

"Law enforcement records cannot 'reasonably be expected to interfere with enforcement proceedings,' . . . unless there is at least 'a reasonable chance that an enforcement proceeding will occur.'" *Dickerson v. Department of Justice*, 992 F.2d 1426, 1430 (6th Cir, 1993). At best, FBI can offer that something *could* happen in the future; that there's a possibility of future law enforcement proceedings at the local or federal level.

As Plaintiffs explained in support of their own motion for summary judgment, while the term "enforcement proceeding" is not defined in FOIA, the U.S. Supreme

Court has explained that this phrase is meant to protect agencies from being "hindered in their investigations or placed at a disadvantage when it came time to present their case." *Robbins Tire & Rubber Co.*, 437 U.S. at 224.

To meet its burden and deny the public access to the documents requested, FBI claims its declarants "readily make [the] 'minimally sufficient showing' by identifying the very harms the Sixth Circuit has repeatedly recognized justify an agency's assertion of Exemption 7(A)." Dkt. 34-1:22. But here, FBI seems to not understand that a "minimal" showing must still be "sufficient." Nothing they say in their declarations is *sufficient* to meet their burden. Certainly, FBI's declarant states some generic harms but merely identifying generic harms is not sufficient. FBI must explain to the Court how releasing the *particular information* requested here by Plaintiffs would lead to those *particular harms*. That is, "the government must show that disclosure of those documents would, in some particular, discernible way, disrupt, impede, or otherwise harm the enforcement proceeding." *North*, 881 F.2d at 1097. FBI has not done so.

In determining whether Exemption 7(A) applies, the Sixth Circuit has recognized the following types of interference: the possibility that perpetrators of a crime, by learning of the investigative leads being pursued, the prime suspects, and the nature of the evidence, could "take steps to destroy or tamper with evidence, intimidate witnesses or construct a false alibi . . . "; the possibility that public disclosure of the investigation would discourage new informants from coming forward; and the possibility that moving factual information into the public domain

will make it difficult to verify statements by future witnesses. *Dickerson*, 992 F.2d at 1433.

FBI's boiler plate declarations fall woefully short of establishing that a release would impact whatever enforcement proceedings they believe may occur in the future. FBI argues in their brief and the declaration of Agent Seidel that potential targets of an investigation could learn "details surrounding the potential criminal activities, the identities of potential witnesses, and the direct and circumstantial evidence of the potential criminal activities." Dkt. 34-1:22; Dkt. 34-2:¶ 31. They say this can lead to the destruction of evidence, the intimidation of witnesses, or efforts to otherwise evade FBI's investigative efforts.

But these statements by FBI are merely conclusory regarding potential adverse effects on their investigation, and such statements are *not* enough to justify denying a free press its right to access these records. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007) (stating that to invoke 7(A), "it is not sufficient for an agency merely to state that disclosure would reveal the focus of an investigation; it must rather demonstrate how disclosure would reveal that focus."). Further, "[w]hile the FBI may take a generic approach to the applicability of Exemption 7(A), grouping the documents into relevant categories instead of proceeding document-by-document, it must still demonstrate to the Court 'how each ... category of documents, if disclosed, would interfere with the investigation.'" *Voinche v. F.B.I.*, 46 F. Supp. 2d 26, 31 (D.D.C. 1999) (*citing Bevis v. Department of State*, 801 F.2d 1386, 1389 (D.C.Cir.1986)).

Instead, the FBI just makes generic statements that disclosure could *potentially* harm their investigation without explaining anything further. FBI has simply not met its burden under the law. Its generic boilerplate statements about potential harm provide nothing for the Court to go off of to determine whether Exemption 7(A) can be properly applied here. Since FBI has failed to meet its burden, their motion should be denied, and Plaintiffs' motion should be granted. The records should be released.

> **1. The existence of MNPD's investigation does not trigger Exemption 7(A), and MNPD has plainly and clearly stated the release of the requested records will not impede their investigation.**

Additionally, FBI claims that Metropolitan Nashville Police Department's (MNPD) investigation, and potential harm to enforcement in that local law enforcement action, warrants them withholding the release of the requested documents.

FBI argues that even though "the MNPD investigation concerns potential violations of state criminal law" that "does not preclude the FBI's assertion of Exemption 7(A)." Dkt. 34-1:19. FBI then cites to *Hopkinson v. Schillinger*, 866 F.2d 1185, 1222 n.27, *on reh'g en banc*, 888 F.2d 1286 (10th Cir, 1989); *Rojem v. U.S. DOJ*, 775 F.Supp. 6, 12 (D.D.C. 1991); and *Peterzell v. U.S. DOJ*, 576 F. Supp. 1492, 1494 (D.D.C. 1983), for the proposition that Exemption 7(A) applies when local law enforcement have provided records to FBI. FBI argues that release of the requested

records could "interfere with and harm . . . the MNPD's ongoing investigation." Dkt. 34-1:23.

However, MNPD themselves have stated (in a declaration provided to the Court by the FBI, no less), that such a conclusion is inaccurate. MNPD's Lt. Brent Gibson declared "MNPD believes that releasing a redacted version of certain of the shooter's writings would not impede the investigation." Dkt. 34-4:4.

And in any event, FBI's argument regarding MNPD's investigation relies on virtually the same boiler plate hypothetical harms they rely on for their own. As already explained, those are simply inadequate to meet the agency's burden under FOIA to deny the public access to the requested records.

## II. There is segregable information that should be disclosed, as MNPD acknowledges.

And even if FBI properly applied Exemption 7(A) here to deny the public the right to access and review some documents, certainly there are elements of those documents that are not exempted, and those portions of the records should be ordered released.

Pursuant to federal law, "[a]ny reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9). Put another way, "any non-exempt information must be segregated and released . . . unless the 'exempt and nonexempt information are "inextricably intertwined," such that the excision of exempt information would impose significant costs on the agency and produce an

edited document with little informational value.'" *Mays v. Drug Enf't Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (citation omitted).

Yet, FBI argues that "disclosure of *any* additional information related to its ongoing investigation could reasonably be expected to interfere with that investigation." Dkt. 34-1:28 (emphasis added). FBI asserts that the documents sought, in their entirety, are exempt pursuant to Exemption 7(A), and that portions of those documents "may also be exempt pursuant to" other exemptions. *See* Dkt. 34-2:¶¶ 33-40.

At the very least, the fact that one law enforcement agency (FBI) claims nothing can be released, while the local law enforcement agency (MNPD) claims redacted records could be released warrants this Court's *in camera* review of the records to determine the propriety of FBI's claims here and verify FBI's statement that absolutely no part of the manifesto contains information that would not interfere with their stated investigation.

### III. The FBI cannot now claim additional exemptions from disclosure, and in any event, Plaintiff seeks only limited information and those exemptions are not applicable.

In initially denying Plaintiffs' FOIA request, FBI exclusively cited to Exemption 7(A) as its grounds for denial. Dkt. 1-4. It was that denial (the application of Exemption 7(A)) which was then administratively appealed. Dkt. 1-5. In denying Plaintiffs' administrative appeal, FBI again exclusively relied on Exemption 7(A). Dkt. 1-6. Plaintiffs then brought this action, seeking judicial review as to whether or not Exemption 7(A) was properly applied to these records. Now, months after denying

- 11 -

Case 3:23-cv-00467 Document 35 Filed 07/24/23 Page 11 of 15 PageID #: 309

Plaintiffs' request exclusively under Exemption 7(A), the FBI is arguing that *in addition* to 7(A), the requested records are also exempt under Exemptions 6, 7(C) and 7(F). Dkt. 34-1:29–32; Dkt. 34-2:¶ 33. FBI claims these *new* exemptions for the first time before this Court.

As a procedural matter, if FBI is going to claim these additional exemptions, then it must produce a *Vaughn* index. While a *Vaughn* index is not required in every case, "[t]he government must provide evidence that enables the court to make a reasoned, independent assessment of the claim of exemption." *Vaughn*, 936 F.2d at 867. Here, the Government's declarations are simply too vague to warrant these additional claimed exemptions without more. A *Vaughn* index would need to be produced in order to provide the level of specificity required for this Court to conduct its analysis. FBI fails to do so.

And in any event, even the vague and conclusory declarations do not meet the FBI's burden to claim the exemptions. Exemptions 6 and 7(C) relate to protecting the privacy of third parties. Plaintiffs simply do not seek any such third-party information. To the extent FBI believes it was within our request, it could, presumably, be redacted. FBI offers no reason why it could not be.

The FBI also has not met its burden for Exemption 7(F). Exemption 7(F) is a public safety exemption. This applies if the release of information could reasonably expect to endanger life or physical safety of any individual. Here again, such information is unrelated to the motives of the shooter, and would not fall within

- 12 -

Case 3:23-cv-00467 Document 35 Filed 07/24/23 Page 12 of 15 PageID #: 310

Plaintiffs' request. To the extent that FBI believes it was within our request, that information could presumably be redacted as well.

## IV. Plaintiffs are entitled to the information requested.

Because the FBI has failed to meet their burden to claim an exemption to FOIA, Plaintiffs are entitled to the documents they have requested: the writings of the shooter identified by the Defendant as a "manifesto" which relates to the shooter's motives for the crime. Plaintiffs acknowledge (and even expect) that FBI could redact or withhold portions of those records. But Plaintiffs are otherwise entitled to the information that was requested. FBI's blanket denials and boilerplate justifications do not satisfy the letter or spirit of FOIA.

## CONCLUSION

Plaintiffs respectfully request that their motion for summary judgment be granted, and that Defendant's motion for summary judgment be denied.

Dated this 24th day of July, 2023.

WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

s/ *Daniel P. Lennington*
Richard M. Esenberg (WI Bar No. 1005622)*
Lucas T. Vebber (WI Bar No. 1067543)*
Daniel P. Lennington (WI Bar No. 1088694)*
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Facsimile: (414) 727-6385
Rick@will-law.org
Lucas@will-law.org
Dan@will-law.org
*admitted *Pro Hac Vice*

MCCLANAHAN & WINSTON, PC

Matthew J. McClanahan (BPR #036867)
PO Box 51907
Knoxville, TN 37950
Telephone: (865) 347-3921
Facsimile: (865) 444-0786
matt@tennadvocate.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2023, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notice to all attorneys of record.

Dated this 24th day of July, 2023.

s/ *Daniel P. Lennington*
Daniel P. Lennington