UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STAR NEWS DIGITAL MEDIA, INC., MICHAEL PATRICK LEAHY, and MATTHEW D. KITTLE,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>    *Defendant.* | Civil Action No. 3:23-cv-00467-AAT |

## REPLY IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT.......................................................................................................................2

I. THE FBI APPROPRIATELY WITHHELD ALL RESPONSIVE DOCUMENTS UNDER EXEMPTION 7(A). ........................................................................................2

    A. The FBI Has Established The Prospect Of Enforcement Proceedings. ...................2

    B. Release Of All Responsive Documents Could Reasonably Be Expected To Interfere With Ongoing Investigations And Possible Enforcement Proceedings.................................................................................................4

    C. The FBI Has Established That No Reasonably Segregable Non-Exempt Information Exists..................................................................................................6

    D. Plaintiffs' Reformulated Request Does Not Alter This Analysis. ..........................7

II. IN THE ALTERNATIVE, THE FBI HAS SHOWN THAT PORTIONS OF THE RECORDS SHOULD BE WITHHELD UNDER EXEMPTIONS 6, 7(C), AND 7(F). ........................................................................................................................9

# TABLE OF AUTHORITIES

**CASES**

*ACLU of Mich. v. FBI,*
 734 F.3d 460 (6th Cir. 2013) ............................................................................... 1, 3, 4, 6, 7

*ACLU of N.J. v. FBI,*
 733 F.3d 526 (3d Cir. 2013) ........................................................................................... 4

*Agrama v. IRS,*
 No. 17-5270, 2019 WL 2064505 (D.C. Cir. Apr. 19, 2019) ......................................... 9

*Ayuda, Inc. v. FTC,*
 70 F. Supp. 3d 247 (D.D.C. 2014) ................................................................................ 9

*Barnard v. DHS,*
 598 F.Supp.2d 1 (D.D.C. 2009) .................................................................................... 9

*Ctr. for Nat'l Sec. Stud. v. Dep't of Just.,*
 331 F.3d 918 (D.C. Cir. 2003) ...................................................................................... 3

*Curran v. Dep't of Just.,*
 813 F.2d 473 (1st Cir. 1987) ......................................................................................... 6

*Dickerson v. Dep't of Just.,*
 992 F.2d 1426 (6th Cir. 1993) ......................................................................... 2, 3, 4, 10

*Equal Employment Opportunity Commission v. Whiting-Turner Contracting Co.,*
 No. 3:21-cv-00753, 2022 WL 3221825 (M.D. Tenn. Aug. 9, 2022) ............................ 5

*Gillin v. IRS,*
 980 F.2d 819 (1st Cir. 1992) ......................................................................................... 8

*In re Dep't of Just.,*
 999 F.2d 1302 (8th Cir. 1993) .................................................................................... 10

*Jud. Watch, Inc. v. FBI,*
 No. 00-cv-745, 2001 WL 35612541 (D.D.C. Apr. 20, 2001) ................................... 2-3

*Kuzma v. Dep't of Just.,*
 692 F. App'x 30 (2d Cir. 2017) ................................................................................ 3-4

*Librach v. FBI,*
 587 F.2d 372 (8th Cir. 1978) ...................................................................................... 10

*Lion Raisins Inc. v. U.S. Dep't of Agric.,*
 231 F. App'x 565 (9th Cir. 2007) ................................................................................. 3

*Manna v. Dep't of Just.*,
   815 F. Supp. 798 (D.N.J. 1993),
   *aff'd*, 51 F.3d 1158 (3d Cir. 1995) ......................................................................................8

*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) ..............................................................................................................3, 8

*Pray v. Dep't of Just.*,
   902 F. Supp. 1 (D.D.C. 1995) ..............................................................................................8

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*,
   740 F.3d 195 (D.C. Cir. 2014) ..........................................................................................10

*Rimmer v. Holder*,
   700 F.3d 246 (6th Cir. 2012) ............................................................................................10

*Robbins, Geller, Rudman & Dowd, LLP v. U.S. Sec. & Exch. Comm'n*,
   No. 3:14-CV-2197, 2016 WL 950995 (M.D. Tenn. Mar. 12, 2016) ..........................................4

*Sussman v. U.S. Marshals Service*,
   494 F.3d 1106 (D.C. Cir. 2007) ..........................................................................................5

*Voinche v. FBI*,
   46 F. Supp. 2d 26 (D.D.C. 1999) ........................................................................................5

*Watters v. Dep't of Just.*,
   576 F. App'x 718 (10th Cir. 2014) ......................................................................................4

# INTRODUCTION

The Court should grant Defendant's motion for summary judgment because the FBI properly withheld the "manifesto" of The Covenant School shooter, Audrey Hale, under FOIA's Exemption 7(A). There is no dispute of fact that Plaintiffs seek law enforcement records compiled pursuant to the ongoing, distinct FBI and MNPD investigations into that tragedy. And the declarations of FBI Section Chief Seidel and MNPD Lieutenant Gibson establish that release of the requested records would interfere with those investigations. No more is required under FOIA Exemption 7(A).

In opposition, Plaintiffs argue that the FBI failed to establish that its investigation will be harmed by release of any of the requested records because the MNPD stated that its investigation would not be harmed by release of a redacted version of the "manifesto." But it is hardly surprising that different law enforcement agencies conducting different investigations into potential violations of different criminal codes would reach different conclusions as to whether any portions of the requested records can be released without causing harm to those investigations. Controlling Sixth Circuit law, which Plaintiffs make no effort to distinguish, recognizes as much. *See ACLU of Mich. v. FBI*, 734 F.3d 460, 467 (6th Cir. 2013) (rejecting argument that Detroit FBI office cannot claim that release of demographic information would cause harm to ongoing investigations merely because other FBI offices released that information). Thus, the MNPD's conclusion does not undermine the analysis in the Seidel Declaration that release of *any* of the responsive records would cause harm to the FBI's ongoing investigation by disclosing the scope and targets of the investigation, and revealing to those targets the FBI's evidence.

Nor can Plaintiffs salvage their request by narrowing it to only writings related "to the motives of the shooter." Evaluation of possible motive is central to the FBI's ongoing investigation into whether potential federal crimes were committed, including whether underlying bias provided motivation or whether like-minded contacts were involved. Thus, release of writings regarding motive could foreseeably cause harm to those aspects of the FBI's investigation. Moreover, Plaintiffs' reformulated request cannot be fulfilled while the FBI investigation is

ongoing because it seeks that investigation's conclusions. Until the FBI has fully examined Hale's writings to investigate potential motive-based crimes, much of those writings could be read broadly to concern motive. Thus, only once that investigation is complete could the FBI definitively identify which writings pertain to motive.

Plaintiffs also repeat their spurious claim that no law enforcement proceedings are possible because the assailant is deceased. But Plaintiffs ignore the possibility of enforcement proceedings against co-conspirators, aiders, or like-minded individuals. And declarations from both the FBI and MNPD clearly establish that possibility by explaining their investigations pursue such targets.

Finally, and only relevant if this Court rejects the FBI's assertion of Exemption 7(A), Plaintiffs do not meaningfully dispute that partial summary judgment is appropriate to allow Defendant to withhold portions of the responsive records under Exemptions 6, 7(C), and 7(F).

## ARGUMENT
### I. THE FBI APPROPRIATELY WITHHELD ALL RESPONSIVE DOCUMENTS UNDER EXEMPTION 7(A).

Plaintiffs do not dispute that the requested records "were compiled for law enforcement purposes," ECF No. 35 ("Resp.") at 4, satisfying the threshold inquiry for application of Exemption 7(A). Nor do Plaintiffs dispute the Seidel Declaration's identification of records by functional category. *See* ECF No. 34-1 ("Def's Br.") at 13-14. Accordingly, the only remaining questions for this Court to decide are whether the FBI has sufficiently established: (1) that enforcement proceedings are still being contemplated; (2) that release of the records could cause harm to those proceedings; and (3) that no non-exempt, segregable information exists. As explained in Defendants' opening brief and below, the FBI has carried its burden on each issue.

**A. The FBI Has Established The Prospect Of Enforcement Proceedings.**

Plaintiffs do not dispute that to establish the prospect of enforcement proceedings, the FBI need only show that "actual enforcement proceedings are still being contemplated." *Dickerson v. Dep't of Just.*, 992 F.2d 1426, 1431 (6th Cir. 1993). *See also Jud. Watch, Inc. v. FBI*, No. 00-cv-745, 2001 WL 35612541, at *5 (D.D.C. Apr. 20, 2001) (Exemption 7(A) applies where

enforcement "proceedings *may become necessary* as the investigation progresses"). That is precisely what the Seidel and Gibson declarations establish. The FBI continues to investigate the events surrounding the shooting "to determine if any federal criminal laws were violated," which "could include whether underlying bias provided motivation, or if any co-conspirators or like-minded contacts were involved." ECF No. 34-2 ("Seidel Decl.") ¶ 28. Such investigations result in criminal prosecutions, including in cases where the primary assailant died. *See* Def's Br. at 11. MNPD also continues to investigate whether Hale "had any assistance with planning the shooting or any assistance with purchasing the weapons … used." ECF No. 34-4 ("Gibson Decl.") ¶ 8.

These declarations therefore establish that enforcement proceedings "are still being contemplated," *Dickerson*, 992 F.2d at 1431. Indeed, Plaintiffs acknowledge as much, conceding "that there's a possibility of future law enforcement proceedings." Resp. at 6. That possibility is sufficient: courts from the Supreme Court on down have repeatedly emphasized that Exemption 7(A) applies where a law enforcement agency invokes only an ongoing investigation, rather than an active enforcement proceeding, so long as enforcement proceedings remain possible. *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) ("Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies *be hindered in their investigations* …."); *Dickerson*, 992 F.2d at 1432 ("clear" record established through FBI declarations that "investigation remains active" is sufficient to establish prospect of enforcement proceedings); *ACLU of Mich.*, 734 F.3d at 463 (Exemption 7(A) applies where declarations assert disclosure would interfere with "counterintelligence investigations"); *Lion Raisins Inc. v. U.S. Dep't of Agric.*, 231 F. App'x 565, 566 (9th Cir. 2007) ("evidence that the criminal investigation remains ongoing" is sufficient); *Ctr. for Nat'l Sec. Stud. v. Dep't of Just.*, 331 F.3d 918, 928 (D.C. Cir. 2003) ("government's expectation that disclosure … would enable … groups to map the course of the investigation" is sufficient).

At most, then, Plaintiffs offer their mere opinion that enforcement proceedings are unlikely because the assailant died. But a requester's "unsupported personal opinion that this investigation is unlikely" to result in enforcement proceedings "is not the contradictory evidence or evidence of

3

bad faith required to overcome the presumption of good faith" that courts "afford the government's declarations." *Kuzma v. Dep't of Just.*, 692 F. App'x 30, 35 (2d Cir. 2017); *see also Watters v. Dep't of Just.*, 576 F. App'x 718, 725 (10th Cir. 2014) (requester's mere "questions" are insufficient to refute FBI declarations stating that there remains "an open investigation").

### B. Release Of All Responsive Documents Could Reasonably Be Expected To Interfere With Ongoing Investigations And Possible Enforcement Proceedings.

The Seidel Declaration establishes that release of the requested records could reasonably be expected to interfere with the FBI's ongoing investigation because "potential targeted individuals" could learn "details surrounding the potential criminal activities, the identities of potential witnesses, and the direct and circumstantial evidence of the potential criminal activities." *See* Seidel Decl. ¶ 31. This information could then be used "to destroy evidence, intimidate potential witnesses, and/or evade the FBI's investigative efforts." *Id.*

Contrary to Plaintiffs' suggestion, Resp. at 7-8, this is the same level of detail that numerous courts have upheld as sufficient to establish a reasonable expectation of interference. *See ACLU of Mich.*, 734 F.3d at 467 (release would harm ongoing investigations where FBI declaration "explain[ed] that disclosure would reveal FBI priorities, threat assessments, and vulnerabilities"); *Robbins, Geller, Rudman & Dowd, LLP v. U.S. Sec. & Exch. Comm'n*, No. 3:14-CV-2197, 2016 WL 950995, at *5 (M.D. Tenn. Mar. 12, 2016) (release would harm ongoing investigation where declarant stated "potential witnesses and defendants could shape their testimony, the testimony of others, or alter, tamper with, or withhold evidence based on what the documents show regarding what other witnesses or defendants know and regarding what the Commission staff knows"); Def's Br. at 15-16 (collecting authorities). Indeed, the very harms that Plaintiffs concede would be sufficient to establish interference are those outlined in the Seidel Declaration. *Compare* Resp. at 6-8 (citing *Dickerson*, 992 F.2d at 143) *with* Seidel Decl. ¶ 31. Accordingly, "[i]t is hard to imagine how the FBI could provide a more detailed justification for withholding information under this exemption without compromising the very information it sought to protect," *ACLU of N.J. v. FBI*, 733 F.3d 526, 532 (3d Cir. 2013).

Plaintiffs' authorities are not to the contrary. In *Sussman v. U.S. Marshals Serv.*, the agency's declaration stated only that release "could be reasonably viewed as revealing the focus of the grand jury investigation," but did not "demonstrate how disclosure would reveal that focus." 494 F.3d 1106, 1114 (D.C. Cir. 2007). The Seidel Declaration contains that missing explanation, demonstrating how release would reveal the focus of the investigation by: identifying "individuals, sources, and potential witnesses who possess information related to the investigation;" providing "details surrounding the potential criminal activities" under investigation; and revealing the extent of the FBI's "direct and circumstantial evidence of the potential criminal activities." Seidel Decl. ¶ 31. In *Voinche v. FBI*, the FBI withheld an entire investigatory file pertaining to Louisiana politicians but failed to "define its categories functionally." 46 F. Supp. 2d, 26, 31 (D.D.C. 1999). That case is therefore inapposite because Plaintiffs here do not even challenge the FBI's functional category, and any such challenge would fail given the specificity of Plaintiffs' request. *See* Def's Br. at 13-14.[1] Accordingly, the FBI has established in sufficient detail that release of the requested records would harm its investigation.

Independent of any harm that release would cause to the FBI's investigation, the Gibson Declaration establishes that full release of the requested records would cause harm to the MNPD's ongoing investigation. Def's Br. at 16-17. By explaining that release could inform potential witnesses how they are mentioned in Hale's writings and cause witnesses to shape their testimony, Gibson Decl. ¶¶ 11-12, the Gibson Declaration provides sufficient detail as to potential harm, *see* Def's Br. at 17 (collecting authorities). Indeed, Plaintiffs do not dispute this harm. Accordingly, even if this Court concludes the harm to the FBI's investigation is insufficient to justify application

---

[1] Plaintiffs' other authorities are even further afield. In *North v. Walsh*, the agency did not "assert[] … that disclosure of the information [plaintiff] seeks can reasonably be expected to harm the government's case in court or impede its investigation." 881 F.2d 1088, 1098 (D.C. Cir. 1989). And in *Equal Employment Opportunity Commission v. Whiting-Turner Contracting Co.*, the agency sought "the ability to claw back the information … that it inadvertently produced in response to [plaintiff's] FOIA request." No. 3:21-cv-00753, 2022 WL 3221825, at *2 (M.D. Tenn. Aug. 9, 2022). The court denied the agency's "claw back" motion because "FOIA does not contain a claw-back provision," *id*.

of Exemption 7(A), it should grant partial summary judgment to authorize the withholding of those portions of the responsive records that the MNPD believes would harm its investigation.

### C. The FBI Has Established That No Reasonably Segregable Non-Exempt Information Exists.

The Seidel Declaration establishes that no segregable information exists because release of even redacted versions of the requested records would cause harm to the FBI's ongoing investigation by providing "details surrounding the potential criminal activities, the identities of potential witnesses, and the direct and circumstantial evidence of the potential criminal activities." Seidel Decl. ¶¶ 29-32, 41. The FBI has therefore carried its burden to show that no reasonably segregable non-exempt information exists. *See* Def's Br. at 21-22; *Curran v. Dep't of Just.*, 813 F.2d 473, 476 (1st Cir. 1987) (no segregable information where "the agency further certified that there was 'no reasonably segregable portion of any of the withheld material' suitable for release, and that any attempt to describe the records in greater detail 'would lead to disclosure of the very information sought to be protected.'" (citation omitted)).

Without engaging the substance of the Seidel Declaration or supporting law, Plaintiffs assert that segregable non-exempt information must exist in the responsive records solely because the MNPD determined that release of certain responsive records in redacted form would not harm its *distinct* investigation. *See* Resp. at 10-11. But it is unsurprising that *different* law enforcement agencies conducting *different* investigations into potential violations of *different* criminal codes would reach different conclusions as to whether release of the requested records would cause harm to those investigations. Controlling authority recognizes as much. *See ACLU of Mich.*, 734 F.3d 460. In that case, the Sixth Circuit rejected the requestor's argument that the FBI's Detroit office cannot invoke Exemption 7(A) to protect demographic information regarding investigatory targets because other FBI offices released that information. *Id.* at 467-68. The Sixth Circuit explained that such information "may be treated differently by different field offices" because "the use—and sensitivity—of such data will vary depending on local conditions." *Id.* at 467.

Indeed, the logic underpinning the Sixth Circuit's holding in *ACLU of Michigan* is even

stronger here because the FBI, unlike the MNPD, is investigating federal crimes—such as "whether underlying bias provided motivation, or if … like-minded contacts were involved." Seidel Decl. ¶ 41. The FBI specifically concluded that, because "the subset of information that the MNPD believes would not impede the MNPD's investigation includes information pertinent to the FBI's investigation," the release of that information would harm the FBI's investigation. *Id.* And if different offices of the same agency may reach different conclusions regarding the harm caused by the release of the same or similar information in *ACLU of Michigan*, it necessarily follows that different law enforcement agencies conducting different investigations under different criminal codes may also reach different conclusions on that question.

### D. Plaintiffs' Reformulated Request Does Not Alter This Analysis.

In an attempt to create responsive non-exempt information, Plaintiffs reformulate their request by both broadening the set of records from which they seek information and purportedly narrowing the subject matter responsive to their request. Neither attempt has merit.

*First*, Plaintiffs' Kittle Declaration suggests the FBI interpreted the request too narrowly by limiting its search to the documents found in the assailant's car because the "manifesto" that Plaintiffs seek refers instead to *all* "documents reflecting the motivation for the shootings, irrespective of where the documents were found." ECF No. 36 ("Kittle Decl.") ¶ 4. But that is not what Plaintiffs' FOIA request stated. Instead, that request sought "a copy of the following document: Audrey Hale's Manifesto related to the Nashville Covenant School Shooting on March 27, 2023." ECF No. 1-1 at 1. Plaintiffs even sent a "clarifying request," ECF No. 1 ¶ 16, to specify they requested "documents making up what law enforcement officials have labeled as Audrey Hale's 'manifesto' related to the Nashville Covenant School Shooting." ECF No. 1-3 at 1.

The only documents that "law enforcement officials have labeled as Audrey Hale's 'manifesto,'" *id.*, "are those writings of the assailant found in the assailant's car on the day of the shooting," Seidel Decl. ¶ 15 n.2. Thus, the "manifesto" is, by definition, limited to this set of documents. If Plaintiffs intended to seek all documents reflecting motivation, rather than merely those documents referred to by law enforcement as a "manifesto," Plaintiffs should have made that

7

request. But they cannot do so after "litigation has commenced." *Gillin v. IRS*, 980 F.2d 819, 823 n.3 (1st Cir. 1992); *see also Pray v. DOJ*, 902 F. Supp. 1, 2-3 (D.D.C. 1995).

*Second*, Plaintiffs attempt to evade Exemption 7(A) by narrowing their request to only the "specific writings related explicitly to the motives of the shooter." Resp. at 3. But the FBI's Exemption 7(A) analysis applies with equal force to writings concerning motive because, as the "FBI's case agent advised," the FBI's ongoing investigatory efforts include "evaluation of possible motive." Seidel Decl. ¶ 23. And this evaluation of motive is not an academic exercise—the FBI's review of the records seeks "to determine if any federal criminal laws were violated," including "whether underlying bias provided motivation, or if … like-minded contacts were involved." *Id.* ¶ 28. Accordingly, release of records regarding motive would cause the same harms to the FBI's investigation as would release of any other part of the manifesto: it would disclose the scope and any targets of the motive investigation, reveal to any targets the FBI's evidence of possible crimes, and thus enable any such targets to evade or frustrate the motive investigation, *supra* 4-6. *See also Manna v. DOJ*, 815 F. Supp. 798, 806 (D.N.J. 1993), *aff'd*, 51 F.3d 1158 (3d Cir. 1995) (information concerning "potential motive for the murders" appropriately withheld under Exemption 7(A)). Indeed, because the FBI determined that release of *any* of Hale's writings could harm the FBI's investigation, *see* Siedel Decl. ¶ 41, the same necessarily holds true for those writings concerning motive.

Nor can Plaintiffs' reformulated request even be fulfilled while the FBI investigation is ongoing because it seeks that investigation's conclusions. Read broadly, much of Hale's writings could implicate motive, which is why the FBI's Behavioral Analysis Unit is examining them, *see id.* ¶ 15. Only once the FBI's ongoing investigation—including as to potential motive-based crimes, *id.* ¶ 28—is complete could the FBI determine which of those writings describe motive.

Finally, Plaintiffs' purported narrowing does not justify *in camera* review of the requested records. Such review is a last resort to be invoked only "when the issue before the [court] could not be otherwise resolved." *Robbins Tire*, 437 U.S. at 224. Here, to the extent the Court determines that additional information is necessary, that information can be provided through an

*in camera* and *ex parte* declaration providing additional detail at the Court's request. *See* Seidel Decl. ¶ 28; *Agrama v. IRS*, No. 17-5270, 2019 WL 2064505, at *2 (D.C. Cir. Apr. 19, 2019) (district court appropriately permitted *ex parte* declaration because "further 'public justification would threaten to reveal the very information for which a FOIA exemption is claimed'").

### II. IN THE ALTERNATIVE, THE FBI HAS SHOWN THAT PORTIONS OF THE RECORDS SHOULD BE WITHHELD UNDER EXEMPTIONS 6, 7(C), AND 7(F).

If the Court determines that the FBI cannot withhold categorically the requested documents under Exemption 7(A), it should still grant partial summary judgment to enable the FBI to withhold names and identifying information of third parties under Exemptions 6 and 7(C) and detailed descriptions of Hale's plans under Exemption 7(F). *See* Def's Br. at 22-25. Indeed, Plaintiffs do not appear to dispute the applicability of these exemptions, conceding that "[t]o the extent that FBI believes it was within our request, that information could presumably be redacted." Resp. at 11-12.[2] That is all the FBI seeks through partial summary judgment on these exemptions: a ruling that the FBI may properly withhold by redaction the names and other identifying information of third parties, pursuant to Exemptions 6 and 7(C), and detailed descriptions of Hale's plans for the shooting, pursuant to Exemption 7(F). To the extent Plaintiffs nonetheless oppose partial summary judgment allowing such redactions, Plaintiffs' arguments in opposition fail.

Plaintiffs first suggest that the FBI waived the ability to assert Exemptions 6, 7(C), and 7(F) by failing to assert those exemptions before summary judgment. Resp. at 12. But the FBI is not limited to the exemptions it asserts when denying a FOIA request; rather, it is "entitled to refine its position by asserting new FOIA exemptions before the Court." *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 261 n.5 (D.D.C. 2014). *See also Barnard v. DHS*, 598 F.Supp.2d 1, 24 (D.D.C. 2009) ("[T]here is no requirement that an agency administratively invoke an exemption" to "rely on it in federal court.") (collecting authorities). The FBI appropriately raised Exemptions 6, 7(C), and 7(F) in its first substantive brief before this Court, and therefore has not waived their applicability.

---

[2] *See also* Kittle Decl. ¶ 7 ("I do not object to the appropriate redaction" of "sensitive information that could interfere with public safety, a future prosecution, or privacy rights of third parties.").

Plaintiffs also argue that the FBI cannot assert the relevant exemptions without providing a *Vaughn* index. Resp. at 12. But as explained in Defendants' opening brief, a *Vaughn* index is not necessary where the agency also asserts Exemption 7(A). *See* Def's Br. at 13-14. That is because, where Exemption 7(A) is at issue, "[p]rovision of the detail which a satisfactory *Vaughn* Index entails would itself probably breach the dike" by disclosing the very information Exemption 7(A) protects. *In re Dep't of Just.*, 999 F.2d 1302, 1311 (8th Cir. 1993). *See also Dickerson*, 992 F.2d at 1431 (declaration alone an "adequate basis" for 7(A) determinations).

Indeed, Plaintiffs concede as much when noting that "a *Vaughn* index is not required in every case." Resp. at 12. Plaintiffs nonetheless claim that the FBI's description of the information the FBI seeks to withhold under Exemptions 6, 7(C), and 7(F) is "simply too vague." *Id.* Not so. The Seidel Declaration describes the information the FBI seeks to withhold pursuant to Exemptions 6 and 7(C) as "names of third-party individuals mentioned by the assailant in her writings including family members, friends, or acquaintances." Seidel Decl. ¶ 37. No more detail is required to invoke either exemption. *See, e.g.*, *Rimmer v. Holder*, 700 F.3d 246, 257 (6th Cir. 2012) ("names and other identifying information of various individuals associated with the investigation" properly withheld under Exemption 7(C)); *Librach v. FBI*, 587 F.2d 372, 373 (8th Cir. 1978) ("names of persons" merely "mentioned" in "investigatory records" properly withheld). Likewise, the Seidel Declaration describes the information the FBI seeks to withhold pursuant to Exemption 7(F) as "extremely detailed" "plans and descriptions concerning the planning of an attack against the [Covenant School]." Seidel Decl. ¶ 39. That level of description is also more than sufficient for this Court to determine that release "could be misused for nefarious ends," such as replicating Hale's attack. *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 206 (D.C. Cir. 2014).[3]

---

[3] If the Court both reaches the FBI's assertion of Exemptions 6, 7(C), and 7(F) and concludes the FBI's descriptions of the withheld information are insufficiently detailed, the FBI would respectfully request the opportunity to provide more detailed information in an *in camera* submission before the material is ordered released. *In re DOJ*, 999 F.2d at 1310 ("If the generic index" is insufficient, "the district court may request more specific, distinct categories.").

Dated: July 31, 2023                Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Alexander W. Resar*
ALEXANDER W. RESAR
N.Y. Bar No. 5636337
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Tel: (202) 616-8188
alexander.w.resar@usdoj.gov

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

ANICA C. JONES, B.P.R. # 025325
Assistant United States Attorney
United States Attorney's Office
719 Church Street, Suite 3300
Nashville, TN 37203
Telephone: (615) 736-5151
Email: anica.jones@usdoj.gov

*Counsel for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2023, a copy of the foregoing was filed electronically. A copy will be sent to the following, if registered, by operation of the Court's electronic filing system. If not registered, a copy was sent by United States First Class Mail, postage prepaid, to the following:

| Daniel P. Lennington<br>Lucas T. Vebber<br>Richard M. Esenberg<br>Wisconsin Institute for Law & Liberty, Inc.<br>330 East Kilbourn Avenue, Suite 725<br>Milwaukee, WI 53202<br>Email: dan@will-law.org<br>Email: lucas@will-law.org<br>Email: rick@will-law.org | Matthew J. McClanahan<br>McClanahan & Winston PC<br>P.O. Box 51907<br>Knoxville, TN 37950<br>Email: matt@tennadvocate.com |
|---|---|

  /s/ Alexander W. Resar
Trial Attorney
U.S. Department of Justice

*Counsel for Defendant*