UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STAR NEWS DIGITAL MEDIA, INC., MICHAEL PATRICK LEAHY, and MATTHEW D. KITTLE,<br><br>*Plaintiffs,*<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>*Defendant.* | Civil Action No. 3:23-cv-00467-AAT |

**OPPOSITION TO PLAINTIFFS' MOTION TO OPEN DISCOVERY, SHORTEN DEFENDANT'S DEADLINE, AND OBTAIN SUPPLEMENTAL BRIEFING**

# INTRODUCTION

Despite downplaying the instant motion as seeking "limited discovery" in which the "FBI must simply admit or deny one request for admission and one interrogatory," Plaintiffs seek extraordinary and unprecedented discovery. They ask permission to require the FBI to confirm, after the parties have briefed summary judgment in this Freedom of Information Act ("FOIA") case, whether three pages that Plaintiffs claim were leaked are in fact part of the writings of Audrey Hale that were collected by law enforcement agencies as part of their investigations into The Covenant School shooting. Plaintiffs cite no case in which a law enforcement agency was required to confirm that leaked documents are actually evidence in a law enforcement investigation, and we are aware of none. They likewise wholly ignore that discovery is exceedingly rare in FOIA cases and only granted upon a showing of bad faith on the part of the agency sufficient to impugn the agency's declarations or because the plaintiff has shown some other reason why summary judgment is inappropriate.

Plaintiffs have not met that standard here. They do not suggest any evidence of bad faith on the part of the FBI or otherwise show how knowing whether the three leaked pages are authentic would undermine the FBI's summary judgment submission. Plaintiffs' theory seems to be if authentic, the content of the three pages shows that the FBI could have released these pages (or at least portions of them) without causing any harm to its ongoing investigation, and that the FBI thereby failed to segregate and release non-exempt information in the responsive records. But this recycles arguments Plaintiffs already made, and the FBI already responded to, in their summary judgment briefs. The argument also relies on Plaintiffs' substituting their own layperson opinion for the FBI's about the value of the three pages to the FBI's investigation and the harm to the investigation if they are publicly released. It is well-established that courts defer to law enforcement agencies' predictions of such harms, not plaintiffs' predictions. And Plaintiffs' argument overstates the FBI's segregability burden under FOIA's Exemption 7(A), the relevant exemption here. Accordingly, Plaintiffs have not shown either bad faith or that the requested discovery would be material to the Court's resolution of the pending summary judgment motions.

## BACKGROUND

At issue in this FOIA case is Plaintiffs' request to the FBI for the "manifesto," or writings, of Audrey Hale found in Hale's car immediately after Hale killed three students and three adults at The Covenant School in Nashville. *See* Mem. of Law in Supp. Of Def's Cross-Mot. for Summ. J. 2-3, ECF No. 34-1. Following the shooting, the Metropolitan Nashville Police Department ("MNPD") shared the manifesto with the FBI, and both opened investigations into the shooting. *Id.* at 2-4. The FBI determined that release of records responsive to Plaintiff's FOIA request could reasonably be expected to interfere with pending or prospective law enforcement proceedings related to the Covenant School shooting and therefore withheld those responsive records in full under FOIA's Exemption 7(A). *See id.* at 4-5; 5 U.S.C. § 552(b)(7)(A)) (exempting from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings").

This case challenges that response. The parties cross-moved for summary judgment on the propriety of the FBI's Exemption 7(A) assertion, as well as the FBI's withholding from the records of third parties' names and identifying information under Exemptions 6 and 7(C) and detailed descriptions of Hale's plans for the shooting under Exemption 7(F). With respect to its Exemption 7(A) assertion, the FBI established in its summary judgment motion that its and MNPD's investigations were ongoing and that the responsive records were compiled for law enforcement purposes. It further explained how releasing the manifesto could reasonably be expected to interfere with enforcement proceedings by prematurely allowing potential targets of the investigation and others to learn what evidence the FBI had gathered and the identities of potential witnesses. Potential co-conspirators or like-minded individuals could use the released information to their advantage to destroy evidence, intimidate potential witnesses, or evade the FBI's investigative efforts, all to the detriment of the FBI's (as well as MNPD's) investigation. ECF No. 34-1 at 9-17. The parties' summary judgment motions were fully briefed as of July 31, 2023, and are pending before the Court.

After that briefing was completed, on November 7, 2023, Plaintiffs moved to "open discovery" for "the limited purpose" of serving the FBI with a request for admission and an interrogatory asking the FBI to confirm the authenticity of what Plaintiffs claim are three pages of the requested manifesto that were leaked and posted online. Mem. in Supp. of Mot. to Open Discovery 2, ECF No. 39-1 ("Mot.") at 2. Plaintiffs claim that on November 6, 2023, political commentator Steven Crowder posted three "leaked pages of the manifesto." Decl. of Michael Patrick Leahy ¶¶ 3-4, ECF No. 39-2. Plaintiffs then published a story about the leak, in which they reported that sources in the Tennessee General Assembly confirmed that the three pages are part of the documents obtained by MNPD during its investigation. *Id.* ¶ 6. In their motion for discovery, Plaintiffs argue that "if authentic, the three pages are certainly 'material' to this Court's consideration of the pending summary judgment motions" because, in Plaintiffs' opinion, the three pages demonstrate that the FBI could have produced portions of the manifesto without causing harm to the ongoing law enforcement investigations. Mot. at 4-6. Plaintiffs also ask the Court to shorten the FBI's time to respond to the contemplated discovery to 5 days, from the standard 30 days, and permit both sides to file supplement briefs one week later. *Id.* at 2.

## ARGUMENT

### I. DISCOVERY, WHICH IS EXCEEDINGLY RARE IN FOIA CASES, IS NOT JUSTIFIED HERE.

The Court should reject Plaintiffs' highly unusual, extraordinary request to propound discovery on the FBI asking it to authenticate that three leaked pages come from the manifesto the FBI possesses as part of its ongoing investigation into the Covenant Shooting. Plaintiffs' motion ignores that discovery is exceedingly rare in FOIA case, let alone after the parties have briefed summary judgment, let alone discovery asking the FBI to confirm the authenticity of leaked documents. Plaintiffs cite no case in which a court has ordered an agency to confirm the authenticity of leaked documents, in any context. Moreover, Plaintiffs seek to substitute their own layperson judgment for the FBI's judgment about how disclosure of three isolated pages of

3

evidence (assuming, as Plaintiffs do, that they are in fact authentic) could impact its investigation. The Court should reject Plaintiffs' unprecedented request.

Plaintiffs argue that under Rule 16, there is good cause for the Court to modify the scheduling order and permit discovery. Mot. at 3. But that ignores that this is a FOIA case, and that the parties have already briefed summary judgment. It is well-established that discovery in a FOIA case is disfavored and considered an "extraordinary procedure." *Thomas v. HHS*, 587 F. Supp. 2d 114, 115 n.2 (D.D.C. 2008).[1] As the Sixth Circuit and other courts of appeals have repeatedly recognized, FOIA claims "are typically resolved without discovery on the basis of the agency's [declarations]," and "'discovery … is unnecessary if the agency's submissions are adequate on their face.'" *CareToLive v. FDA*, 631 F.3d 336, 345 (6th Cir. 2011) (quoting *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (citing *Rugiero v. DOJ*, 257 F.3d 534, 544 (6th Cir. 2001)). Once the agency has satisfied its burden on summary judgment of showing that it conducted an adequate search and explaining why any withheld documents fall within an exemption, a plaintiff may obtain discovery only if it "make[s] a 'showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations,' or provide[s] some other evidence why summary judgment is inappropriate." *CareToLive*, 631 F.3d at 345 (quoting *Carney*, 19 F.3d at 812). Discovery is not permissible in a FOIA case when it "would only … afford[] [the plaintiff] an opportunity to pursue a 'bare hope of falling upon something that might

---

[1] *See also, e.g.*, *Canning v. DOJ*, No. 11-cv-1295, 2013 WL 1333422, at *1 (D.D.C. Apr. 2, 2013) ("discovery in general is unavailable in [FOIA] actions"); *Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) ("discovery is disfavored" in FOIA actions (collecting cases)), *aff'd*, 485 F. App'x 439 (D.C. Cir. 2012) (*per curiam*); *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 187 (D.D.C. 2011) ("'discovery is not favored in lawsuits under the FOIA'" (alterations omitted) (*quoting Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d 76, 80 (D.D.C. 2010)); *Asarco, Inc. v. EPA*, No. 08-cv-1332, 2009 WL 1138830, at *1 (D.D.C. Apr. 28, 2009) (citing "the consistent holding in case after case that discovery is not favored in . . . [FOIA] cases and only allowed under rare circumstances"); *Ford Motor Co. v. U.S. Customs & Border Prot.*, No. 06-cv-13346, 2008 WL 4899402, at *6 (E.D. Mich. Aug. 1, 2008) (magistrate's recommendation) ("discovery is the exception, not the rule, in FOIA cases" (collecting cases) (citation omitted)), *adopted in relevant part*, 2008 WL 4899401 (E.D. Mich. Nov. 12, 2008); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions.") (citation omitted).

impugn the [agency's] affidavits.'" *Military Audit Project v. Casey*, 656 F.2d 724, 751-52 (D.C. Cir. 1981) (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836-37 n.101 (D.C. Cir. 1979)).

Accordingly, when discovery is permitted in FOIA cases, it is typically in the context of a Rule 56(d) motion, in which a plaintiff demonstrates that it needs certain specific discovery in order to rebut the government's showing that its search was adequate or that any withholdings are justified. *See, e.g.*, *Taylor v. Babbitt*, 673 F. Supp. 2d 20, 23 (D.D.C. 2009) (In FOIA context, "[i]f, after the government has submitted its motion for summary judgment, the plaintiff is unable to oppose the motion without further discovery, he may file a Rule 56(f) motion"); *Chelmowski v. United States*, No. CV 17-1394 (JEB), 2021 WL 3077558, at *6 (D.D.C. July 21, 2021), *aff'd*, No. 21-5208, 2022 WL 11337053 (D.C. Cir. Oct. 17, 2022) ("While discovery in FOIA cases under Rule 56(d) is occasionally permitted, it is typically proper only when a plaintiff has raised a sufficient concern of bad faith by a defendant government agency."); *Jett v. FBI*, 241 F. Supp. 3d 1, 14 (D.D.C. 2017) (granting discovery request under Rule 56(d) for "limited purpose of determining whether the FBI has the capability of simultaneously searching for records in the CRS and ELSUR indices").

Here, Plaintiffs did not file a motion under Rule 56(d) contending that they were unable to oppose the FBI's cross-motion for summary judgment. Rather, Plaintiffs not only opposed the FBI's cross-motion but in fact first filed their own motion for summary judgment. Nor do Plaintiffs in their instant motion suggest any evidence of bad faith on the part of the FBI or otherwise show how knowing whether the three leaked pages are authentic—the specific discovery requested—would undermine the FBI's summary judgment submission. Plaintiffs do not, for instance, argue that the release of the three pages was an official disclosure by the FBI that would waive its ability to rely on Exemption 7(A). *See Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 710 (D.C. Cir. 2022) ("[W]hen an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information.") (quotation marks omitted). To the contrary, Plaintiffs call the release

5

of the three pages a "leak," which implies an *unofficial* disclosure, and provide no evidence whatsoever of an official disclosure by the FBI.

Instead, Plaintiffs' theory seems to be that if authentic, the content of the three pages shows that the FBI could have released these pages without causing any harm to its ongoing investigation, and that the FBI thereby failed to segregate and release non-exempt information in the responsive records. Plaintiffs argue that the three pages "expressly include Hale's motivations for the killings," but that Hale is dead and cannot be charged with a crime. Mot. at 4. But Plaintiffs already argued in their summary judgment papers—without the benefit of these three pages or knowing whether they are authentic—that Hale is dead and cannot be charged with a crime, and that therefore any information in the manifesto that goes to Hale's motives cannot be relevant to the ongoing investigations. Pls. Reply 6, ECF No. 35 ("Plaintiffs seek to review the shooter's manifesto writings which indicate the shooter's motivations to act. That is it. The shooter is, undisputedly, deceased, and there can be no harm to an ongoing investigation of a deceased individual."). And the FBI already responded that its Exemption 7(A) analysis applies with equal force to writings concerning motive because, as the "FBI's case agent advised," the FBI's ongoing investigatory efforts include "evaluation of possible motive." Decl. of Michael G. Seidel ¶ 23, ECF No. 34-2 ("Seidel Decl."). And this evaluation of motive is not an academic exercise—the FBI's review of the records seeks "'to determine if any federal criminal laws were violated,'" including "'whether underlying bias provided motivation, or if … like-minded contacts were involved.'" Reply in Supp. of Def.'s Cross- Mot. for Summ. J. 8, ECF No. 38 (quoting Seidel Decl.).

Plaintiffs' subjective, layperson assessment of the content of the three pages and their value to the ongoing investigations, all made in isolation of other evidence that the FBI may possess, cannot undermine the FBI's judgment about how release of responsive records would harm its investigation. Courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption," *Shannahan v. Internal Revenue Service*, 672 F.3d 1142, 1148 (9th Cir. 2012), and "give deference to an agency's predictive judgment of the harm that will result

from disclosure of information," *Citizens for Responsibility & Ethics in Washington v. United States Department of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014), not to a layperson's. *See Elec. Priv. Info. Ctr. v. Dep't of Just. Crim. Div.*, 82 F. Supp. 3d 307, 321 (D.D.C. 2015) (release regarding scope of ongoing investigation "is precisely the type of information that Exemption 7(A) protects and why this Court must defer to the agencies' expertise"). Plaintiffs claim that the FBI would not be prejudiced by answering the "limited" discovery request of admitting or denying the authenticity of the three pages, Mot. at 3-4, but doing so in the affirmative would be tantamount to releasing responsive records and would cause the very harms identified by the FBI. That Plaintiffs' motion effectively seeks the very information that is the subject of their FOIA request is an additional reason to deny it. *Tax Analysts v. IRS*, 410 F.3d 715, 722 (D.C. Cir. 2005) ("Tax Analysts's demand for further inquiry into the substance of the documents would, if granted, turn FOIA on its head, awarding Appellant in discovery the very remedy for which it seeks to prevail in the suit. The courts must not grant FOIA plaintiffs discovery that would be tantamount to granting the final relief sought.") (quotations omitted).

Plaintiffs' argument that discovery is relevant to dispute the FBI's segregability showing also ignores the lessened duty to segregate under Exemption 7(A). When an agency "invokes the categorical approach under Exemption 7(A)," as FBI has done here, the "court need not determine the precise scope of an agency's segregation duty." *Manning v. U.S. DOJ*, 234 F. Supp. 3d 26, 38 (D.D.C. 2017). That is because the agency demonstrates harm from release of the records to the ongoing investigation on a categorical basis, not on the basis of individual documents or parts of documents. Thus "the actual contents of the documents are not relevant when the propriety of Exemption 7(A) is in dispute." *In re U.S. DOJ*, 999 F.2d 1302, 1309 n.3 (8th Cir. 1993); *see also Shannahan v. IRS*, 672 F.3d 1142, 1150 (9th Cir. 2012) ("[T]he [agency] is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding. The [agency] need only make a general

showing that disclosure of its investigatory records would interfere with its enforcement proceedings.").

Accordingly, Plaintiffs have not shown that ordering the FBI to confirm the authenticity of the leaked three pages—an extraordinary request in its own right—is needed to refute the FBI's summary judgment submission, let alone that it is justified by bad faith on the part of the FBI.[2]

## II. PLAINTIFFS PROVIDE NO BASIS FOR THEIR REQUEST TO EXPEDITE DISCOVERY.

Nor have Plaintiffs provided any justification whatsoever for their request to shorten Defendant's deadline to respond to the discovery Plaintiffs wish to propound, from the 30 days the rules provide to a mere 5 days. A party seeking expedited discovery must show "good cause." *St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("The burden of showing good cause is on the party seeking the expedited discovery."); *see also S. Nurseries, Inc. v. Tenn. Nursery & Landscape Supply LLC*, No. 3:19-CV-0665, 2019 WL 13202350, at *1 (M.D. Tenn. Sept. 3, 2019) ("Plaintiff, as the requesting party, bears the burden of demonstrating good cause for expedited discovery."). That is because "[e]xpedited discovery is not the norm," as "[p]laintiff[s] must make some *prima facie* showing of the *need* for the expedited discovery." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000).

Plaintiffs do not even attempt to identify good cause here, and none exists. *See, e.g.*, *USEC Inc. v. Everitt*, No. 3:09-CV-4, 2009 WL 152479, at *3 (E.D. Tenn. Jan. 22, 2009) ("Good cause" to expedite discovery "is usually found in cases involving requests for injunctive relief, challenges to personal jurisdiction, class action, and claims of infringement and unfair competition."). Indeed, Plaintiffs provide no reason at all for this request, and cannot do so on reply, *see Sanborn v. Parker*,

---

[2] Even if the Court were to deny the FBI's summary judgment motion on the basis that its declarations were insufficient, discovery would still not be appropriate. *See, e.g., Beltranena v. Clinton*, 770 F. Supp. 2d 175, 187 (D.D.C. 2011) (directing agency to supplement its affidavits in FOIA case, including as to segregability, rather than granting discovery); *Reich v. DOE*, 784 F. Supp. 2d 15, 21 (D. Mass. 2011) (a court "generally will request a supplement [to agency declaration] before ordering discovery").

629 F.3d 554, 579 (6th Cir. 2010) ("arguments made to us for the first time in a reply brief are waived"); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (same).

## CONCLUSION

For all the foregoing reasons, Plaintiffs' motion for discovery should be denied.

Dated: November 21, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Alexander W. Resar*
ALEXANDER W. RESAR
N.Y. Bar No. 5636337
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Tel: (202) 616-8188
alexander.w.resar@usdoj.gov

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

ANICA C. JONES, B.P.R. # 025325
Assistant United States Attorney
United States Attorney's Office
719 Church Street, Suite 3300
Nashville, TN 37203
Telephone: (615) 736-5151
Email: anica.jones@usdoj.gov

*Counsel for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2023, a copy of the foregoing was filed electronically. A copy will be sent to the following, if registered, by operation of the Court's electronic filing system. If not registered, a copy was sent by United States First Class Mail, postage prepaid, to the following:

| Daniel P. Lennington<br>Lucas T. Vebber<br>Richard M. Esenberg<br>Wisconsin Institute for Law & Liberty, Inc.<br>330 East Kilbourn Avenue, Suite 725<br>Milwaukee, WI 53202<br>Email: dan@will-law.org<br>Email: lucas@will-law.org<br>Email: rick@will-law.org | Matthew J. McClanahan<br>McClanahan & Winston PC<br>P.O. Box 51907<br>Knoxville, TN 37950<br>Email: matt@tennadvocate.com |
|---|---|

   /s/ Alexander W. Resar
Trial Attorney
U.S. Department of Justice

*Counsel for Defendant*